318 F.2d 533
 In the Matter of the GRAND JURY INVESTIGATION OF VIOLATIONS OF 18 U.S.C. § 1621 (PERJURY).
 No. 28193.
 United States Court of Appeals Second Circuit.
 Motions Argued May 6, 1963.
 Decided May 20, 1963.
 Rehearing Denied June 11, 1963.
 
 Bruce Bromley, New York City (Cravath, Swaine & Moore, New York City; Aloysius F. Power, Robert A. Nitschke, Detroit, Mich., John W. Barnum, New York City, of counsel), for General Motors Corp.
 Victor C. Woerheide, Washington, D. C. (Robert M. Talcott, Carl W. Schwarz, Special Attys., Washington, D. C.), for the United States.
 Before FRIENDLY, KAUFMAN and MARSHALL, Circuit Judges.
 FRIENDLY, Circuit Judge.
 
 
 1
 The United States moves that we dismiss appeals by General Motors Corporation from, or summarily affirm, an order of Judge Edelstein in the District Court for the Southern District of New York. The order related to a grand jury investigation, initiated in the fall of 1962, into possible offenses under the perjury statute, 18 U.S.C. § 1621, on the part of officials of General Motors who had testified in a 1961 grand jury investigation, also in the Southern District of New York, of alleged violations of the Sherman Act in the company's manufacture and sale of railroad locomotives. The 1961 grand jury had returned an indictment against General Motors which was transferred to the Northern District of Illinois, where it is now awaiting trial.
 
 
 2
 In the 1962 grand jury proceedings, an attorney in the Antitrust Division who was in charge of the prosecution of the antitrust case caused subpoenas to be issued to certain General Motors officials, none of whom had testified before the 1961 grand jury but who, allegedly, were potentially important witnesses for the defense in the antitrust prosecution. Thereupon General Motors obtained an ex parte order staying compliance with the subpoenas pending disposition of a motion to be promptly made. Although General Motors fully recognized the right of the United States to investigate the alleged perjury, it claimed that the 1962 grand jury proceedings might constitute an abuse of process by enabling the Government to examine defense witnesses in advance of a criminal trial, despite the considered omission from the Federal Rules of Criminal Procedure of any provision for this type of discovery,[1] and to do so, moreover, in the secret, nonadversary form of grand jury testimony. To prevent such an abuse General Motors moved for an order limiting the conduct of the perjury investigation to persons designated by the Attorney General who were not members of the Antitrust Division, prohibiting disclosure of the transcript of the investigation to anyone other than the persons so designated, disqualifying any person so designated or otherwise having knowledge of the transcript from participating in the prosecution of the anti-trust indictment, and quashing the subpoenas that had been issued at the instance of the Antitrust Division. In the course of the proceedings on the motion, the Government submitted to the judge, but not to General Motors, an affidavit of one Maneker, an attorney in the Department of Justice, setting forth, as we are told, the basis for the institution and scope of the perjury investigation; it opposed a motion by General Motors to have the affidavit either disclosed or expunged.
 
 
 3
 On February 27, 1963, Judge Edelstein filed an opinion, entered in the Clerk's docket on the same day, denying General Motors' basic motion and also its motion relating to the Maneker affidavit. D.C., 32 F.R.D. 175. On April 12 he signed an order, submitted by General Motors, denying the motions and ordering the appearance of four of the five witnesses on whom subpoenas had been served (the fifth had died); the Government took the position that the order was unnecessary because, as it claimed, the filing and docket-notation of the judge's opinion on February 27 had constituted an order. On April 22, General Motors filed a notice of appeal from the order of April 12; on April 29, it filed another notice of appeal relating also to the action taken on February 27.
 
 
 4
 The Government's motions in this Court and General Motors' response present a variety of procedural and substantive questions in addition to the one we deem decisive. Among these are whether the time for appeal started to run on February 27 when Judge Edelstein's opinion was entered, on April 12 when he signed the order, or on April 16 when the order was entered; whether the time limit for appeal is the 10 days provided by Criminal Rule 37(a) (2) or the 60 days provided by Civil Rule 73(a); whether General Motors has any standing to appeal; whether the ex parte consideration of the Maneker affidavit was proper; and whether General Motors' showing warranted the relief sought. We do not reach any of these questions because we find ourselves without jurisdiction over the appeal even if we assume it was seasonably taken.
 
 
 5
 Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), held that an order denying the application of witnesses to quash grand jury subpoenas was not "included within those `final decisions' in the district court which alone the circuit courts of appeal are authorized to review" by what is now 28 U.S.C. § 1291. Di Bella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L. Ed.2d 614 (1962), reinforced the lesson of Cobbledick and corrected our error in having considered that an order granting or denying a pre-indictment motion to suppress evidence was appealable; "Only if the motion is solely for return of property and is in no way tied to a criminal prosecution in esse against the movant can the proceedings be regarded as independent." 369 U.S. at 131-132, 82 S.Ct. at 660. United States v. Koenig, decided in the same opinion, contributed the additional emphasis that the needed finality was not attained by the suppression motion's being made in a district different from that of the criminal prosecution. The case before us differs in that the movant is neither a prospective witness before the grand jury, as in Cobbledick, nor a prospective defendant on the charge to which his motion relates, as in Di Bella and Koenig, but a defendant named in another indictment. However, the same considerations that underlie the Supreme Court's decisions in those cases are applicable here: "[E]ncouragement of delay is fatal to the vindication of the criminal law." 309 U.S. at 325, 60 S.Ct. at 541; "The duration of its [the grand jury's] life, frequently short, is limited by statute. It is no less important to safeguard against undue interruption the inquiry instituted by a grand jury than to protect from delay the progress of the trial after an indictment has been found." 309 U.S. at 327, 60 S.Ct. at 542. The denial of General Motors' motion here will in no way prevent it from asserting in the criminal trial in the Northern District of Illinois, if occasion should arise, that evidence proffered against it has been improperly obtained; its position in this respect is quite analogous to that of the unsuccessful movants in Di Bella and Koenig. Although the order refuses what General Motors deems the most efficacious means of sealing off the evidence to be taken before the grand jury investigating perjury from the trial of the anti-trust indictment, it makes no final determination of General Motors' claims in that regard. Cf. Sam Fox Publishing Co. v. United States, 366 U.S. 683, 689, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961). The order is thus not appealable as a final decision under 28 U.S.C. § 1291.
 
 
 6
 There is even less force in the contention that the order denied an injunction and therefore is appealable under 28 U.S.C. § 1292(a) (1). The Supreme Court scarcely intended that the important policy pronouncements in Cobbledick and Di Bella could be side-stepped by baptizing a motion to quash as one to enjoin the prosecutor from enforcing a subpoena, or a motion to suppress as one for an injunction restraining the use of the evidence and mandating its return; yet such a description would be quite as valid as that which General Motors puts forth here. In Grant v. United States, 282 F.2d 165, 168-170 (2 Cir., 1960), we pointed out that orders restraining prosecutors from using evidence are not to be regarded as made in adversary civil litigation but, as explained by Judge Hough long ago, are steps taken pursuant to "the inherent disciplinary power of any court of record" over its officers, including the United States Attorney. United States v. Maresca, 266 F. 713, 717 (S.D.N.Y. 1920); see also Application of Iaconi, 120 F.Supp. 589 (D.Mass.1954), and Judge Edelstein's opinion in the instant case, 32 F.R.D. at 181. We there showed also that the history of § 1292(a) (1), stemming from § 7 of the Evarts Act, c. 517, 26 Stat. 828 (1891), which provided an exception to the requirement of finality in cases "where, upon a hearing in equity in a district court, or in an existing circuit court, an injunction shall be granted", etc., tended to negate a construction that would include a court's directions to its officers to act or refrain from acting. See also United States v. Rosenwasser, 145 F.2d 1015, 156 A.L.R. 1200 (9 Cir., 1944); Fleischer v. Phillips, 264 F.2d 515, 516 (2 Cir.), cert. denied, 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1959). Our reading of § 1292(a) (1) in this respect has now been confirmed by the Supreme Court's statement in Di Bella that "Every statutory exception [to the rule of finality] is addressed either in terms or by necessary operation solely to civil actions." 369 U.S. at 126, 82 S.Ct. at 657.[2]
 
 
 7
 Appeals dismissed.
 
 On Petition for Rehearing
 
 8
 General Motors Corporation's "petition for rehearing in banc" apparently does not seek reconsideration by the panel of the court that dismissed its appeal, but rather is an application for a rehearing by the nine active judges. This ignores our Rule 25(b), which directs that "Any petition for rehearing shall be addressed to the court as constituted in the original hearing" and "shall be disposed of by the court as so constituted unless a majority of said court or any active judge of this court, either from a suggestion by petitioner or sua sponte, shall be of the opinion that the case should be reheard en banc, in which event the Chief Judge shall cause that issue to be determined by the active judges of this court." In conformity with our regular practice in these frequent instances where counsel nevertheless address their "petition for rehearing" to the full court, we shall treat the petition as seeking reconsideration by the panel and as suggesting, if that is denied, reconsideration in banc.
 
 
 9
 The petition places principal reliance on an alleged inconsistency between our statement, 318 F.2d 535, that one reason why Judge Edelstein's order denying General Motors' motion was not a "final decision" appealable under 28 U.S.C. § 1291 was that General Motors can advance its claim of abuse of process in its own forthcoming criminal trial in the Northern District of Illinois, and a remark in the concurring opinion of Chief Judge Lumbard in In re Magnus, Mabee & Reynard, Inc., 311 F.2d 12, 18-19 (2 Cir., 1962), cert. denied, 373 U.S. 902, 83 S.Ct. 1289, 10 L.Ed.2d 198 (1963).[1] Apart from the fact that the majority opinion in the Magnus case, written by Judge Moore for Judge Swan and himself, does not appear to have joined in this, Chief Judge Lumbard's remark went to the issue of the standing of a criminal defendant to object to an administrative summons issued to another person, an issue which we did not here reach, 318 F.2d 535, and not to the question of the finality and hence of the appealability of the order refusing to quash the summons. The Magnus opinions, see also 299 F.2d 335 (2 Cir.), cert. denied, 370 U.S. 918, 82 S.Ct. 1556, 8 L.Ed.2d 499 (1962), do not disclose that appealability was considered by the court, and the issue was scarcely open in view of our recent decision in Application of Colton, 291 F.2d 487 (2 Cir., 1961). In Colton we noted that in Cobbledick v. United States, 309 U.S. 323, 329-330, 60 S.Ct. 540, 84 L.Ed. 783 (1940), the Supreme Court had differentiated for purposes of appealability orders enforcing administrative subpoenas from orders denying applications of witnesses to quash grand jury subpoenas; and we held, following International Commodities Corp. v. Internal Revenue Service, 224 F.2d 882 (2 Cir., 1955), that the same distinguishing principle applied to render appealable an order refusing to quash an administrative summons issued under § 7602 of the Internal Revenue Code. Assuming that the Colton rule of appealability was and remains sound — as to which see In re Turner, 309 F.2d 69, 72 (2 Cir., 1962); 75 Harv.L.Rev. 1222 (1962); Application of Davis, 303 F.2d 601 (7 Cir., 1962), cert. granted sub nom. Davis v. Soja, 371 U.S. 810, 83 S.Ct. 45, 9 L.Ed. 2d 53 (1962) — the principle is surely not one we would have any disposition to extend in view of experience with the delays to which it predictably and inevitably leads, see In re Turner, supra; In re Magnus, Mabee & Reynard, Inc., supra, 311 F.2d at 13-14 — even if Supreme Court authority allowed us to do so.
 
 
 10
 Beyond this, General Motors again seeks to differentiate its case from that of the grand jury witness in Cobbledick, who can precipitate a "final decision" by submitting to a contempt citation, and from the unsuccessful movant for suppression in Di Bella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962), who can obtain review if the evidence sought to be suppressed is admitted at his own criminal trial and a conviction results. But to recognize these differences, as our opinion did, 318 F.2d 535, is not to say that they call for a difference in result. The asserted distinction between General Motors' situation and that of the unsuccessful movant for suppression ignores that such a motion may concern not simply property that has been seized but also oral communications, and may include the "fruit of the poisonous tree," which is often quite as difficult of ascertainment as the benefits of the Government's allegedly improper discovery would be here. Perhaps the closest analogy to General Motors' application, which requests that the government lawyers taking part in its criminal antitrust trial be prevented from learning of the evidence to be given by its officers in the perjury investigation by the grand jury, is afforded by motions seeking the disqualification of attorneys for an alleged conflict of interest or violation of privilege; there, even in civil actions, orders refusing to disqualify have been held not to be appealable under the rule of Cohen v. Beneficial Ind. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), on which General Motors here relies. Fleischer v. Phillips, 264 F.2d 515 (2 Cir.), cert. denied, 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1959); Marco v. Dulles, 268 F.2d 192 (2 Cir., 1959). Hence we need not determine whether decisions such as United States v. Guterma, 272 F.2d 344 (2 Cir., 1959), and Schwimmer v. United States, 232 F.2d 855, 860 (8 Cir.), cert. denied, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956), both upholding the appealability of an order refusing the application of a prospective criminal defendant to quash a grand jury subpoena on a third person,[2] retain their vitality after Di Bella. These decisions rested on Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), which had been distinguished in Cobbledick, 309 U.S. at 328-329, 60 S.Ct. at 542-543, but was mentioned in Di Bella with what may be contended to be disapproval. 369 U.S. at 124 & n. 2, 82 S.Ct. at 656. The problems that General Motors may have in seeking to protect itself in the criminal trial in the Northern District of Illinois from what it alleges to be — but the District Court found not to be — an abuse of the grand jury process may be very real, as its petition claims. But no one is saying that General Motors and others similarly situated are without remedy where the grand jury sits, in addition to their rights at the place of trial; what is said is that the policy of avoiding undue delay in grand jury proceedings, which the Supreme Court has stressed in Cobbledick and Di Bella, requires that the applicant be satisfied for the time being with the determination of the district judge — as the Government would have had to be if his decision had been otherwise. The federal policy of finality, in pursuing the larger goals at which it aims, often precludes review in matters far more consequential to litigants than this.
 
 
 11
 The petition for rehearing is denied by the panel. In accordance with our regular practice the suggestion for rehearing in banc will be transmitted to the Chief Judge for circulation to all active judges.
 
 
 
 Notes:
 
 
 [1]
 Limited provision to that end was contained in the draft rules submitted to the Supreme Court, Advisory Committee, Federal Rules of Criminal Procedure, Preliminary Draft. Rule 18, Second Preliminary Draft, Rule 17 (1943), but was stricken by it
 
 
 [2]
 It is also noteworthy that what the Supreme Court termed in Carroll v. United States, 354 U.S. 394, 403, 77 S.Ct. 1332, 1338, 1 L.Ed.2d 1442 (1957), "The only decision of this Court applying to a criminal case the reasoning of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 [69 S.Ct. 1221, 93 L.Ed. 1528]", to wit, Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951), concerned orders denying or refusing to reduce bail — appeals from which do not delay the criminal proceedings
 
 
 [1]
 A letter from General Motors' counsel, received and considered shortly before our opinion was filed, had called this remark to our attention
 
 
 [2]
 General Motors also cites In re April 1956 Term Grand Jury, 239 F.2d 263 (7 Cir., 1956), and Homan Mfg. Co. v. Russo, 233 F.2d 547 (7 Cir., 1956), where appealability was assumed but not discussed