541 F.2d 166
 In re SPECIAL MARCH 1974 GRAND JURY POSSIBLE VIOLATIONS OF
TITLE 18 AND 26, UNITED STATES CODE.
Appeal of INGRAM CORPORATION.
INGRAM CORPORATION, Petitioner,
v.
Hon. James B. PARSONS, United States, District Court for the
Northern District of Illinois, Respondent.
 Nos. 76-1372, 76-1419.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 15, 1976.
Decided Aug. 24, 1976.
 
 Herbert J. Miller, Jr., Washington, D. C., Bernard J. Nussbaum, Chicago, Ill., for petitioner.
 Samuel K. Skinner, U. S. Atty., Gordon B. Nash, Jr., Asst. U. S. Atty., Chicago, Ill., for respondent.
 Before SPRECHER and BAUER, Circuit Judges, and CAMPBELL, Senior Judge.*
 BAUER, Circuit Judge.
 
 
 1
 The question presented on this appeal is whether an appellate court has jurisdiction to review an order denying Ingram Corporation's request for an evidentiary hearing to determine whether there were improper disclosures of grand jury materials in violation of Rule 6(e) of the Federal Rules of Criminal Procedure.[1]
 
 
 2
 In March 1974 a special grand jury was summoned in the Northern District of Illinois to investigate possible violations of the criminal code. After the grand jury was convened the government obtained an ex parte order[2] which granted other government agents the right to review the evidence presented before the grand jury. The order authorized them to review the materials to determine whether any criminal or civil violations had occurred.
 
 
 3
 Attorneys for Ingram, upon discovering the order, objected because it allowed government agents to review the evidence before the grand jury to determine if civil violations occurred. As a general rule, the grand jury investigates matters which are possible violations of the criminal laws. Counsel for Ingram appeared before the Chief Judge, who supervises the grand jury, and sought to have all the evidence relating to alleged civil violations ruled inadmissible for purposes of future litigation. In addition Ingram sought an evidentiary hearing to determine the extent and nature of the actions taken by government investigators under the order. The Chief Judge amended the order by striking out the reference to civil violations but refused to conduct an evidentiary hearing.
 
 
 4
 Subsequently, Ingram renewed its motion for an evidentiary hearing and submitted several affidavits showing: (1) that grand jury materials were allegedly being used by the IRS for the purposes of both civil and criminal investigations, and (2) that IRS agents allegedly were working simultaneously for their own agency and for the grand jury. Ingram argued that the evidence in these affidavits required a hearing on whether the grand jury process had been abused both by making grand jury materials available to unauthorized persons and by improperly using the grand jury's powers to aid a civil investigation.
 
 
 5
 In response to the renewed motion for an evidentiary hearing, the two Assistant United States Attorneys in charge of the grand jury investigation filed affidavits with the court asserting unequivocally that the only purpose of the grand jury inquiry was to determine whether there had been criminal violations and that disclosure had only been made to agents of the government in order to assist in making that determination. The Chief Judge denied Ingram's renewed motion. Ingram filed a notice of appeal and a petition for a writ of mandamus. Since oral argument, an indictment has been returned by the grand jury charging various officers of Ingram with criminal violations stemming from an alleged multi-million dollar bribery-fraud scheme.
 
 I.
 
 6
 As a general rule, an interlocutory decision in a criminal case stemming from action taken by a grand jury is not a proper subject for review by a court of appeals. The Supreme Court expressed this view in Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), when it held that an order compelling testimony or the production of documents before a grand jury was non-appealable. The Court stated:"The proceeding before a grand jury constitutes 'judicial inquiry,' Hale v. Henkel, 201 U.S. 43, 66, (26 S.Ct. 370, 375, 50 L.Ed. 652), of the most ancient lineage. . . . The duration of its life, frequently short, is limited by statute. It is no less important to safeguard against undue interruption the inquiry instituted by a grand jury than to protect from delay the progress of the trial after an indictment has been found. Opportunity for obstructing the 'orderly progress' of investigation should no more be encouraged in one case than in the other. That a grand jury proceeding has no defined litigants and that none may emerge from it, is irrelevant to the issue." 309 U.S. at 327-28, 60 S.Ct. at 542.
 
 
 7
 Since Cobbledick the Supreme Court has consistently rejected attempts to expand appellate jurisdiction over on-going criminal investigations and trials. See United States v. Ryan, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); Di Bella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); Carroll v. United States, 354 U.S. 394, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957). In Ryan, supra, at 533, 91 S.Ct. at 1582, Justice Brennan stated:
 
 
 8
 "Only in the limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claims have we allowed exceptions to this principle."
 
 
 9
 One exceptional situation noted by the Court was presented in Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918). There the Court allowed an immediate review of an order directing a third party to produce exhibits which were the property of appellant and, so he claimed, immune from production. To deny immediate interlocutory review, the Court stated, would have left Perlman "powerless to avert the mischief of the order." Id. at 13, 38 S.Ct. at 419.
 
 
 10
 Unlike in the previous Supreme Court decisions, the petitioner in this case does not seek to appeal the denial of a motion to quash subpoenas. Rather, Ingram seeks review of a denial of a motion to disclose the work of the grand jury by conducting an evidentiary hearing. Since we believe the same rule of non-appealability that was expressed in Cobbledick applies, we must determine whether the denial of an appeal would leave Ingram "powerless to avert the mischief of the order," as in Perlman, supra.
 
 
 11
 In re Grand Jury Investigation of Violations (General Motors), 318 F.2d 533 (2d Cir. 1963), involved a factual situation quite similar to the case before us. There appellants unsuccessfully sought a protective order in the trial court to prevent grand jury materials from being used in a related but separate criminal action then pending in another jurisdiction. Accepting the government's representations, supported by an in camera affidavit, that the grand jury investigation had been instituted in good faith and not for the purpose of simply gathering evidence to support the pending indictment, the district court denied the motion for a protective order. The Second Circuit dismissed the appeal of the denial on the ground that the order was not a final decision under the statute stating:
 
 
 12
 "The denial of General Motor's motion here will in no way prevent it from asserting in the criminal trial in the Northern District of Illinois, if occasion should arise, that evidence proffered against it has been improperly obtained. . . . Although the order refuses what General Motors deems the most efficacious means of sealing off the evidence to be taken before the grand jury investigating perjury from the trial of the anti-trust indictment, it makes no final determination of General Motor's claim in that regard." Id. at 535-36.
 
 
 13
 In General Motors, the district judge rejected the argument, which is also made in this case, that immediate intrusion into the grand jury investigation was necessary because of possible difficulties which might later be encountered in reconstructing whether or not the grand jury process had been abused. The Appeals Court agreed, pointing out that the dual policies of finality and of "avoiding undue delay in a grand jury proceedings" took precedence over those possible future difficulties and required "that the applicant be satisfied for the time being with the determination of the district judge. . . ." Id. at 538. This Court reached a similar conclusion recently in Application of Johnson, 484 F.2d 791 (7th Cir. 1973), which involved an appeal from an order denying a motion to expunge and annul a grand jury report on the ground that the report violated the secrecy provisions of Rule 6(e). The Court held that such an order was not appealable.
 
 
 14
 In this case Ingram has failed to demonstrate how a denial of review will leave it powerless eventually to correct an injustice on a plenary review after the grand jury has ceased its investigation and the criminal trial has been conducted. Assuming arguendo that the original order approving a civil as well as criminal investigation was improper,[3] and that there was a wrongful disclosure of grand jury materials to government officials to assist them in a civil prosecution, Ingram may still seek to prohibit introduction of evidence at a civil trial because it was improperly obtained. That alternative is much more attractive than conducting an evidentiary hearing into a grand jury investigation. Presently there is no civil action pending against Ingram arising out of this investigation. But there is a criminal action pending, and wholesale disclosure of the government's investigation via an evidentiary hearing would be manifestly unfair to the government, which has been preparing its case for over two years. To conduct an evidentiary hearing because a civil case may be brought in the future would be blatantly improper under these circumstances.
 
 II.
 
 15
 Admittedly, many previous decisions have reached the merits of interlocutory problems involving the grand jury with little or no discussion of jurisdiction. See United States v. Universal Manufacturing Co., 525 F.2d 808 (8th Cir. 1975); In re Biaggi, 478 F.2d 489 (2d Cir. 1973); In re Holovachka, supra ; In re Grand Jury Proceedings, 309 F.2d 440 (3d Cir. 1972); Doe v. Rosenberry, 255 F.2d 118 (2d Cir. 1958); In re April 1956 Grand Jury (Shotwell), supra ; In re Special February 1971 Grand Jury v. Conlisk, 490 F.2d 894 (7th Cir. 1973). However, none of these cases involved a situation where a criminal indictment was returned, and no apparent threat of a civil suit based on evidence obtained in violation of the grand jury secrecy rules existed.
 
 
 16
 Ingram places great reliance upon our previous decision in April 1956 Term Grand Jury (Shotwell), supra, where a similar motion was made to open up the grand jury proceedings for public inspection. Although the Court did not discuss the jurisdictional issue, it noted that a district court could not properly interfere with the actions of the grand jury. The Court refused to order a hearing but authorized a restraining order should grand jury secrecy be violated. Judge Schnackenberg stated:
 
 
 17
 "In view of the independence of the grand jury and its traditional functions, on the showing made it would be incongruous for the district court to require the grand jury to produce its minutes in open court for examination, to assemble and interrogate it or the members thereof . . . and it would also be unwarranted for the court to quash all of the subpoenas on the ground of the constitutional violations charged. Any such actions by the district court would be gratuitous." 239 F.2d at 270.
 
 
 18
 As a consequence, were we to ignore the jurisdictional question, or assume jurisdiction sub silentio, we would still be bound by the holding in Shotwell where petitioner's request for an evidentiary hearing was denied.
 
 
 19
 In another of this Court's previous decisions, In re Holovachka, supra, this Court assumed jurisdiction over an appeal from an order respecting grand jury secrecy. But Holovachka involved a situation where the district court ordered that the grand jury minutes be made available for use in a disbarment proceeding. The Court ruled that such a disclosure was improper. An appeal at that point was timely because the order authorized a disclosure to an administrative board over which the Circuit Court would have no jurisdiction. As a consequence, if the Court of Appeals had not heard the question, the petitioner would have no forum in which to make his objection.
 
 
 20
 In Special February 1971 Grand Jury v. Conlisk, supra, this Court was again faced with an appeal that required the Court to either immediately review the issues or not review them at all. There, five policemen moved to vacate orders authorizing disclosure to the superintendent of police of grand jury minutes to be used in a disciplinary hearing. The policemen had previously appeared before the grand jury and sought to prevent disclosure of their testimony. Since there was no federal charge pending, if the Court had refused to hear the appeal there would have been no possible manner for the policemen to preserve an appeal on their claim that such disclosure violated the grand jury secrecy rules. Thus the Court had no choice but to take jurisdiction to preserve a question of significant legal dispute and concern.
 
 
 21
 In summary, a review of this Court's decisions on questions presented by grand jury proceedings indicates that only in unusual circumstances will we deviate from the Supreme Court's advice in Cobbledick, supra, to prevent "undue interruption" by hearing interlocutory appeals. In Holovachka, and Conlisk, supra, where jurisdiction was assumed by this Court, an appeal was necessary to preserve an important issue. In contrast, in this case there were no criminal cases pending which would be unduly interrupted and perhaps significantly affected by such a disclosure. In Shotwell, supra, although the Court assumed jurisdiction, it noted that a hearing into the grand jury proceedings would be unwarranted.
 
 III.
 
 22
 Anticipating that this Court might not have jurisdiction, Ingram also filed a petition for a writ of mandamus pursuant to 28 U.S.C. § 1651(a)[4] and Rule 21 of the Federal Rules of Appellate Procedure.
 
 
 23
 Mandamus is an extraordinary remedy traditionally employed only "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." Roche v. Evaporated Milk Association, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). A party seeking a mandamus must show that its right to the issuance of a writ of mandamus is "clear and indisputable." Will v. United States, 389 U.S. 90, 96, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), quoting Bankers Life & Casualty Company v. Holland, 346 U.S. 379, 384, 74 S.Ct. 145, 98 L.Ed. 106 (1953).
 
 
 24
 The placing of such a heavy burden on the party seeking a mandamus and the requiring of exceptional circumstances to activate appellate jurisdiction stems from the same policy considerations which gave birth to the finality statute. This attitude was correctly expressed in Lampman v. United States District Court for the Central District of California, 418 F.2d 215, 217 (9th Cir. 1969), when the Court stated:
 
 
 25
 "Every consideration relating to piecemeal litigation and delay of grand jury proceedings on which the Supreme Court rested its decision in Cobbledick is equally applicable when we consider whether to exercise our jurisdiction under the All Writs Act."
 
 
 26
 If past decisions and policy considerations have necessitated the finding that the district court order is not final, and thus not appealable, we should not allow a disruption of the judicial process by a device of another make the extraordinary writ of mandamus. United States v. Grand Jury, 425 F.2d 327 (5th Cir. 1970); Application of Johnson, supra.
 
 
 27
 By our decision today we do not seek to deny appellant's right to question an alleged abuse of the grand jury process. However, at this point in the litigation we believe that the criminal proceedings should go forward. In the event of a civil suit, Ingram can again raise an objection to the misuse of the grand jury process, if such abuse occurred.
 
 
 28
 APPEAL DISMISSED FOR WANT OF JURISDICTION.
 
 
 29
 PETITION FOR A WRIT OF MANDAMUS IS DENIED.
 
 
 
 *
 The Hon. William J. Campbell, United States District Court for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 Rule 6(e) states:
 "Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise, a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule. The court may direct that an indictment shall be kept secret until the defendant is in custody or has given bail, and in that event the clerk shall seal the indictment and no person shall disclose the finding of the indictment except when necessary for the issuance and execution of a warrant or summons."
 
 
 [2]
 The order, which was issued by Chief Judge Robson on June 14, 1974, provided that:
 "(I)nspectors and agents of the Internal Revenue Service, Federal Bureau of Investigation, and Postal Inspection Services be granted access to subpoenaed books, records and transcripts of testimony, or copies thereof, of the Special March 1974 Grand Jury . . . presently impanelled in this District, which books, records and transcripts are in the custody and control of the said Grand Jury in order to determine whether there have been civil or criminal violations of Titles 18 and 26, United States Code."
 
 
 [3]
 There is little doubt that, absent some unusual circumstances, the use of the grand jury to obtain evidence for a civil proceeding is improper. As this Court previously stated in In re April 1956 Term Grand Jury (Shotwell), 239 F.2d 263, 271 (7th Cir. 1956):
 "With the consent of the grand jury this material has been turned over to treasury agents, who, with their assistants, have been examining it. If these efforts are directed toward the procuring of evidence for civil proceedings now or hereafter pending against petitioners, and that purpose is accomplished, then the secrecy of the grand jury has been breached. We find nothing in the history of the grand jury to justify the perversion of its functions or machinery by third persons for the purposes of a civil proceeding. * * * With the grand jury came its time-honored policy of secrecy. The idea that information obtained from the perusal of material in the possession of a grand jury may be used for the purpose of a civil proceeding is in direct conflict with the policy of secrecy of grand jury proceedings."
 See also United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); In re Holovachka, 317 F.2d 834 (7th Cir. 1963).
 
 
 [4]
 28 U.S.C. § 1651(a) states:
 "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."