**FEDERAL TRADE COMMISSION, Washington, D. C., Petitioner,**

v.

**UNITED STATES PIPE AND FOUNDRY COMPANY, a corporation, Birmingham, Alabama, Respondent.**

**Civ. A. No. 1500–69.**

United States District Court
D. Columbia.

Oct. 3, 1969.

---

Jerold D. Cummins, Federal Trade Commission, Washington, D. C., for plaintiff.

Alan S. Ward, Washington, D. C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

PRATT, District Judge.

This matter having come before the Court on the petition of the Federal Trade Commission for an order requiring the respondent United States Pipe and Foundry Company to produce documents in accordance with a subpoena duces tecum issued by a hearing examiner in the course of an adjudicative matter before the Commission, and the Court having considered the petition, its attachments, and the memoranda in support and in opposition filed herein, and having heard oral argument in open court, it hereby finds the facts and states the conclusions of law as follows:

*Findings of Fact*

1. The Commission is presently conducting an inquiry upon a complaint issued by it on January 17, 1968, against the Koppers Company, Incorporated (Koppers) charging it with methods of competition and acts and practices violative of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, in connection with the production of resorcinol (an industrial chemical), including acts by Koppers to foreclose entry into the resorcinol market by the United States Pipe and Foundry Company (U. S. Pipe). According to the complaint, Koppers' actions have had the effect of causing the failure of U. S. Pipe to establish itself as an alternate producer and viable competitor in that market. Koppers filed an answer denying the charges.

2. During prehearing discovery proceedings upon the complaint and answer, a duly appointed hearing examiner of the Commission on November 20, 1968 issued and caused to be served upon U. S. Pipe's subpoena duces tecum returnable within the jurisdiction of this Court.[1]

3. As later modified by the hearing examiner, the subpoena calls for production of records and documents covering the period April 1, 1965 to March 12, 1968 (except for items 5 and 6 for which the time period is January 1, 1962 to March 12, 1968), and pertaining to U. S. Pipe's production of resorcinol, including documents showing prices, sales, production costs, profit or loss, and documents comparing these figures with past estimates or forecasts.[2] In requesting

---

1. An earlier subpoena duces tecum, hereinafter mentioned, was served on U. S. Pipe and was complied with.

2. The full text of the subpoena is as follows:

1. Memoranda, sales reports or studies (without regard to title) that tabulate, discuss or analyze sales of Resorcinol by United States Pipe and Foundry Company (excluding invoices or similar documents which reflect specific individual sales) including the following categories of documents:

(a) Documents that tabulate the amounts of sales in dollars and pounds of Resorcinol on an annual, semiannual or monthly basis,

(b) Documents that tabulate customers to whom United States Pipe and Foundry Company has sold Resorcinol,

(c) Documents that analyze sales performance in relation to past goals or that project future sales goals or performance,

(d) Documents that describe competition from Koppers or that anticipated from other companies,

(e) Documents that describe the market for Resorcinol in terms of end uses,

(f) Documents that tabulate term contracts or purchase order agreements between United States Pipe and Foundry Company and customers purchasing Resorcinol.

2. Memoranda, production reports or studies (without regard to title) that describe or analyze the volume of Resorcinol production, the cost of Resorcinol production, and profits or losses from the

this subpoena Koppers pointed out to the Commission and its examiner that counsel supporting the complaint had given notice that they intended to call U. S. Pipe officials as witnesses at the hearings. Koppers argued that it needed the data in the subpoena for purposes of cross-examination and to defend against the charge in the complaint that it had prevented U. S. Pipe's entry into the resorcinol market, *contending that any difficulties U. S. Pipe had were due to its own high production costs and not to anything which Koppers had done.*

4. Also sought in the subpoena are underlying documents prepared in connection with certain pre-April 1965 market entry "study" or "studies" which U. S. Pipe had returned under the previous subpoena. Koppers had contended that the return on that subpoena was incomplete, as there was only one basic "study" and that study was couched in generalized language and referred to other underlying documents and data not returned by U. S. Pipe. Although the hearing examiner declined to rule that U. S. Pipe was in default under the first subpoena, he did agree that Koppers was entitled to get such underlying material under the second subpoena.

5. In opinions dated July 2, 1968 and November 1, 1968, the Commission upheld Koppers' right to both subpoenas. In the latter opinion, dealing with Koppers' request for the second subpoena, the Commission ruled:

"While we venture no opinion as to the kind or quality of evidence that would constitute a prima facie showing under this section, it would be patently improper to accept into evi-

sale of Resorcinol, including the following categories of documents:
    (a) Documents tabulating costs at various levels of production,
    (b) Documents disclosing percentage return on investment,
    (c) Documents calculating profit or loss per pound of Resorcinol sold,
    (d) Documents disclosing gross and net revenue from the sale of Resorcinol on an annual, semiannual or monthly basis,
    (e) Documents disclosing volume of Resorcinol produced on annual, semiannual or monthly basis,
    (f) Documents comparing profit or loss performance, volume produced, and cost of production with past estimates or forecasts.

3. Memoranda, sales reports or studies (without regard to title) that describe or analyze the price or price per pound charged or proposed to be charged by United States Pipe and Foundry Company for Resorcinol or that describe or analyze contemplated price changes (excluding invoices or other documents that only reflect specific individual sales).

4. Memoranda, reports, studies or projections (without regard to title and excluding individual salesmen's calls on particular customers) that describe or project plans to expand production capacities, to develop new markets, or to increase sales of Resorcinol.

5. The tabulation described by the witness Mr. Saltsman as having been attached to the "Proposal Report" dated November 11, 1964 and marked USP–3 a–c.

6. Documents prepared in connection with United States Pipe and Foundry Company's plans to become a Resorcinol producer and used as a basis for the summary reports produced by United States Pipe and Foundry Company in response to the subpoena *duces tecum* returnable on August 8, 1968, including the following categories of documents:
    (a) Documents reporting production cost estimates derived from pilot plant experience,
    (b) Documents tabulating estimated profit at various levels of production,
    (c) Documents tabulating estimates of cost at various levels of production,
    (d) Documents projecting sales and forecasting the ability to meet such projections,
    (e) Documents describing the categories of customer to whom United States Pipe and Foundry Company planned to sell Resorcinol,
    (f) Documents describing the end uses or potential end uses for Resorcinol.

7. Studies and surveys relating to the plans of United States Pipe and Foundry Company to become a Resorcinol producer made during the period from April, 1965 until United States Pipe and Foundry Company actually began commercial production of Resorcinol.

8. Descriptions containing details of secret processes, if any, are to be physically deleted from all documents produced under this subpoena.

dence testimony of officers of U. S. Pipe, or documents from its files, in support of paragraph seven while at the same time honoring U. S. Pipe's assertion of a privilege against disclosing documents that might contradict such a showing. Moreover, without inquiry into contemporaneous business records, it would be difficult or impossible to establish whether U. S. Pipe's resorcinol venture was commercially viable and thus that it would have succeeded in the commercial resorcinol market had the alleged acts and practices of the respondent not taken place."

6. After issuance of the subpoena on November 20, 1968, U. S. Pipe moved to quash the subpoena on several grounds. The hearing examiner denied the motion

but ruled that descriptions of secret processes could be omitted by U. S. Pipe in making return on the subpoena. He also entered an order which provided that "the contents of the documents shall not be disclosed to anyone except counsel of record of the parties pending decision of a motion which may be made by United States Pipe and Foundry Company for a protective order within ten days after production of such documents." [3]

7. U.S. Pipe appealed to the Commission from the hearing examiner's denial of the motion to quash, raising numerous objections, including objections to the propriety of a second subpoena, its scope, the relevance of the documents called for, and the adequacy of any protective order that could be

3. Respondent urges this Court to enter the following order:

It is ordered that:

The documents described, or copies thereof shall be delivered to William Simon and Paul d'Hedouville, trial counsel of Koppers Company, Inc., and shall be held in complete confidence by them. They are hereby restrained and enjoined from revealing said documents or any of the contents thereof, either directly or indirectly to any other person except the hearing examiner and complaint counsel (to whom copies shall be shown in advance on request) in an *in camera* hearing before the Federal Trade Commission (the "Commission"). No copies of said documents shall be made. If the documents or any of them shall be offered and received into evidence, said documents shall be maintained by the Commission in absolute secrecy and shall not be revealed by the Commission or any Commission personnel to anyone, including other Government agencies, for any reason, except that Commission personnel having litigation or other duties reasonably requiring access to the said documents may be authorized by the Commission to inspect said documents. Any notes made by said trial counsel of Koppers or complaint counsel shall be destroyed when no longer needed by them in the conduct of the litigation. If any of said documents should not be offered into evidence by Koppers, they shall be returned to U. S. Pipe at the conclusion of the hearing before the hearing examiner. All other documents shall be returned to U. S. Pipe at the conclusion

of the litigation. This order is subject to the right of a reviewing United States Court of Appeals to specify the protective measures, if any, which shall apply to the said documents on an appeal to such Court from any Commission order.

The Government asks that no order be entered. It submits the following if any order were to be granted:

IT IS FURTHER ORDERED that documents produced in compliance with said subpoena shall be placed in the custody of counsel of record for the Koppers Company, Inc., provided that said counsel shall first undertake and agree that all such documents shall be retained in their personal custody, shall not be used, copied, abstracted, or disclosed to any other person except to the extent such documents are introduced into evidence at the adjudicatory hearings before the Federal Trade Commission or are used for the purpose of preparation, examination, and cross-examination of witnesses at said hearings, and that upon conclusion of the proceeding before the Commission they shall return all such documents not admitted in evidence to counsel for United States Pipe and Foundry Company. Any witness obtaining access to the information under the terms of this order shall be informed of this order and sign an affidavit to that effect and giving assurance that he will comply with this order. Such affidavit shall be filed with the Secretary of the Commission. Such person shall not reveal the contents of the documents or use the information for any purpose other than for testimony in the Commission's proceedings.

entered by the examiner. After full briefing by both parties, the Commission issued an opinion, dated January 15, 1969, in which it found no impropriety in the examiner's rulings.

8. Subsequent to the ruling of the Commission, the hearing examiner issued an order scheduling the return date on the subpoena, setting it for January 31, 1969.

9. On January 31, 1969, respondent U. S. Pipe, appeared but refused to produce records and documents in accordance with the subpoena.

10. On June 4, 1969, the Federal Trade Commission, with the authorization of the Attorney General of the United States, filed a petition in this Court for an order requiring respondent U. S. Pipe to produce documentary evidence in compliance with the Commission's subpoena. On June 5, 1969, Judge Howard F. Corcoran of this Court ordered respondent to appear and show cause why the Court should not grant the petition.

11. Prior to such appearance, respondent filed a motion to quash this Court's show cause order because of lack of personal jurisdiction over respondent. Hearings on that motion were held before Judge Corcoran on July 14, 1969, at the conclusion of which Judge Corcoran denied the motion to quash.

12. The date upon which respondent was to appear and show cause why the Commission's petition should not be granted was extended by subsequent amendments until September 11, 1969, when the matter came on for hearing.

### Conclusions of Law

1. Jurisdiction of this cause and of respondent, and power to issue the order hereafter prayed for, are conferred upon this Court by Section 9 of the Federal Trade Commission Act, 15 U.S.C. § 49, which provides that any District Court of the United States "within the jurisdiction of which such inquiry is carried on may, in case of contumacy or refusal to obey a subpoena issued to any corporation or other person, issue an order requiring such corporation or other person to appear before the commission, or to produce documentary evidence if so ordered, or to give evidence touching the matter in question; * * *." The inquiry, in the course of which petitioner's subpoena was issued and served, is being conducted by petitioner within the jurisdiction of this Court.

2. The subpoena should be enforced by this Court if the agency's proceeding is within its statutory authority, and if the documents demanded by the subpoena are reasonably relevant to the proceeding and are described with sufficient particularity. Oklahoma Press Pub. Co. v. Walling 327 U.S. 186, 208–209, 66 S.Ct. 494, 90 L.Ed. 614 (1946); Civil Aeronautics Board v. Hermann, 353 U.S. 322, 77 S.Ct. 804, 1 L.Ed.2d 852 (1957); Adams v. Federal Trade Commission, 296 F.2d 861, 866 (8th Cir. 1961), cert. denied, 369 U.S. 864, 82 S.Ct. 1029, 8 L.Ed.2d 83 (1962). Under the standards enumerated in the above cases, our determination is limited to the question whether the petitioner abused its discretion in issuing the subpoena.

3. The inquiry by the Commission into alleged unfair acts and practices of the Koppers Company, during which inquiry the subpoena was issued, is clearly within the statutory authority of the Commission. Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.

4. In an adjudicative matter before the Commission, Koppers as the party named in the Commission's complaint has the right to prehearing discovery processes, including subpoenas duces tecum, on a showing of general relevance and reasonable scope of the evidence sought. 5 U.S.C. § 555(d) (Supp. III, 1965–67); Commission's Rules of Practice, Section 3.42, 16 C.F. R. 3.42 (1969).

5. The documents called for are reasonably relevant to the proceeding. Both the hearing examiner and the Commission have considered carefully the relevancy of the documents in question. In

the Matter of Koppers Co., Inc., Docket No. 8755 (Jan. 15, 1969). The subpoena now at issue was in fact prompted by respondent's response to the first subpoena and the Commission in upholding the instant subpoena specifically noted the care with which the hearing examiner observed the Commission precedents in analyzing this subpoena. This court is reluctant to substitute its judgment for the well informed judgments of the examiner and the Commission.

■ Respondent argues that since the Commission's complaint alleges that Koppers, by unlawful methods of competition, attempted to maintain a monopoly by preventing respondent from entering the resorcinol market, the subpoenaed documents are not relevant to any defense which Koppers might have. It appears that at least two possible defenses exist to the charge of monopolization: the "thrust upon" defense and the "superior product and knowledge" defense. United States v. Grinnell Corp., 384 U. S. 563, 570–571, 86 S.Ct. 1698, 16 L.Ed. 2d 778 (1965). Evidence tending to show that respondent was an inferior competitor is relevant to these defenses. In actions brought under Section 2 of the Sherman Act involving similar charges of monopolization and exclusion of competitors, defendants have been allowed pretrial discovery under appropriate protective orders, of competitor's costs, profits, and other data, over the objection that such information was irrelevant and confidential. See United States v. American Optical Co., 39 F.R. D. 580 (N.D.Cal.1966); see also Covey Oil Co. v. Continental Oil Co., 340 F.2d 993 (10th Cir. 1965).

■ 6. The subpoena is limited to a reasonable period of time. It describes the documents to be produced with sufficient particularity to satisfy any Fourth Amendment objections. Oklahoma Press Pub. Co. v. Walling, *supra*. Respondent has not demonstrated that these materials are so voluminous that production would be unduly burdensome. Any such objection

should be directed to the hearing examiner.

7. On the basis of the foregoing, we conclude that there had been no abuse by the petitioner in the issuance of the subpoena.

■ 8. The type of protective order to be entered against disclosure or misuse of confidential information must be determined in the first instance by the hearing examiner and the Commission. Federal Communications Commission v. Schreiber, 381 U.S. 279, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965). Here the Commission and examiner have not as yet determined the details of such protective order since the exact nature of the documents will not be known until they are produced. Further, the protective order entered by the examiner pursuant to the first subpoena was adequate and no reason exists to prompt suspicion that a less adequate order will be entered as to this subpoena. Respondent's contention that protective orders entered in adjudicatory proceedings are distinguishable from those in rule-making proceedings is not well taken. The *Schreiber* doctrine applies to both types of proceedings, where an administrative rule governs the protective order. 16 C.F.R. 3.45 (1969); see Gellhorn, The Treatment of Confidential Information by the FTC: Pretrial Practices, 36 U.Chi.L.Rev. 113, 179 n. 289 (1968); cf. Federal Trade Commission v. Continental Can Co., 267 F. Supp. 713 (S.D.N.Y.1967).

■ 9. There has been no abuse of discretion in the treatment to be accorded the documents to be produced in response to the subpoena. The hearing examiner has entered an order which provides that the contents of the documents shall not be disclosed to anyone, except counsel of record, pending a motion which may be made by U. S. Pipe for a more permanent type of protection within ten days after production of the documents. This ruling is in accord with Rule 3.45 of the Commission's Rules of Practice, 16 C.F.R. 3.45 (1969) similar to the administrative rule upheld

in Federal Communications Commission v. Schreiber, *supra,* 381 U.S. at 293, 85 S.Ct. 1459.

10. It is within the power of this Court to direct (1) that the original inspection of the documents produced be *in camera* and (2) that since Thomas C. Cochran, Jr., one of counsel of record, is also Secretary of Koppers, any protective order to be entered by petitioner's hearing examiner or by the petitioner shall provide that none of the documents produced in response to the subpoena shall be disclosed or made available to said Thomas C. Cochran, Jr.

11. The subpoena in question having been issued and served in accordance with law, the relief prayed for by the petitioner should be granted.